IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 3:19-CR-146-TAV-DCP-2 |
| CHRISTOPHER ROCHON, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Christopher Rochon's Motion for Emergency Release [Doc. 89], filed on May 11, 2020.

Defendant requests that the Court reconsider his detention prior to trial, arguing that there are conditions in place that would reasonably assure his appearance and the safety of the community, particularly in light of the potential exposure to the COVID-19 virus stemming from his detention.

In consideration of releasing Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments presented by the parties, as well as the Pretrial Services Report ("PSR") prepared in the Eastern District of Michigan and the May 22, 2020 Memorandum of the United States Probation Services in the Eastern District of Tennessee, establish by clear and convincing evidence that the Defendant is a danger to the community and that no condition or combination of conditions of release will reasonably assure the safety of the community. Additionally, the undersigned finds that Defendant has failed to show a specific threat

of serious complications from contracting COVID-19. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

## I. BACKGROUND

Defendant is charged [Doc. 3] with the conspiracy to distribute and possess with intent to distribute four hundred (400) grams or more of a mixture containing fentanyl and one hundred (100) grams or more of a mixture containing heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), the distribution of a quantity of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

Defendant was arrested for the instant offense in the Eastern District of Michigan on February 7, 2020 and was ordered temporarily detained pending a detention hearing. A detention hearing was held before Magistrate Judge Elizabeth Stafford in the Eastern District of Michigan on February 11, 2020, and Defendant was ordered detained on February 12, 2020. Specifically, the Eastern District of Michigan found that Defendant had not introduced sufficient evidence to rebut the presumption under 18 U.S.C. § 3142(e)(3), as well as that by clear and convincing evidence, no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. *See* [Doc. 89-1].

Defendant was subsequently remanded to custody for transportation to the Eastern District of Tennessee for further proceedings. Defendant appeared before the undersigned for an Initial Appearance and Arraignment on March 9, 2020, and the Federal Defender Services of Eastern Tennessee and Assistant Federal Defender Nakeisha Jackson were appointed as counsel. *See* [Docs. 63 & 65]. Defendant then filed his Motion for Emergency Release [Doc. 89] on May 11, 2020.

## II. ANALYSIS

Defendant now moves [Doc. 89] for release pursuant to 18 U.S.C. § 3142(i), which provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Defendant argues that the COVID-19 pandemic provides a compelling reason for his release because his "asthma makes him a high risk for complications of COVID-19" while detained at the Blount County Jail (the "detention facility"). [*Id.* at 7].

Defendant maintains that the detention facility does not have "the testing, quarantining, or treatment capacity" to effectively combat the COVID-19 virus, and points to precedent of courts nationwide releasing pretrial detainees with pre-existing conditions, even in presumption cases and cases based on violent charges. [*Id.* at 6]. In particular, Defendant asserts that although there are no positive cases at the detention facility, he is currently held in "D-Pod," where he shares a two-person cell with three other inmates, thus making it impossible for him to effectively socially distance. [*Id.* at 14]. Defendant submits that he does not present a serious flight risk or danger to the community, and requests to "be placed on *temporary, emergency* release" under "home confinement" to reside with his longtime friend, Victoria Green, in Knoxville, Tennessee "only for the duration of the COVID-19 pandemic." [*Id.* at 15].

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history

3

and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4). Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download.

Finally, the Court observes that in the instant case, a rebuttable presumption applies, requiring the Court to presume that no condition or combination of conditions will reasonably assure Defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(A). In this respect, the Court finds probable cause, in the form of the Indictment, to believe that the Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, who must "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Id*. The Government retains the burden of persuasion. *Stone*, 608 F.3d at 947.

Guided by these provisions of the Bail Reform Act, the Court will first address the respective section 3142(g) factors, in light of the rebuttable presumption, and then analyze Defendant's specific arguments related to the COVID-19 virus.

4

### A. Section 3142(g) Factors

First, the Court finds that the nature and circumstances of the offense charged argues in favor of detention. 18 U.S.C. § 3142(g)(1). As the Court previously detailed, Defendant is charged [Doc. 3] with the conspiracy to distribute and possess with intent to distribute four hundred (400) grams or more of a mixture containing fentanyl and one hundred (100) grams or more of a mixture containing heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), as well as the distribution of a quantity of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Defendant thus faces a rebuttable presumption that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Therefore, the Court finds that this factor weighs in favor of detention.

Second, the weight of the evidence of Defendant's dangerousness argues in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Further, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community"). Accordingly, the Court finds that this factor weighs in favor of detention.

Next, the Court must consider a host of factors in regard to the history and characteristics of Defendant, which factors the Court also finds weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A). In Defendant's reply [Doc. 97], he notes that before his arrest, he successfully

5

started his own trucking dispatch business, and that upon release, he would be able to re-enter the workforce while on home confinement.  Additionally, Defendant submitted six letters detailing his medical concerns and community and family support.  Defendant states that he has lived in Knoxville for four years, and proffers that Victoria Green, a Knoxville resident and friend of Defendant, would be willing to act as a third-party custodian.  However, the United States Probation Office reported to the Court in its May 22, 2020 Memorandum[1] that after attempting to contact Ms. Green, it had not received a return call or any communication.  While the Memorandum states that the United States Probation Office attempted to contact Ms. Green on May 20, 2020, Defendant has failed to detail further communication between Ms. Green and the Probation Office.  Additionally, while Defendant file several letters from family members and friends in support of his request, he failed to submit a letter or any further information on Ms. Green.  *See* [Docs. 97-1–97-6].

As part of this analysis, the Court considers Defendant's criminal history, including both actual convictions and mere arrests or charges to assess the Defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention.  *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). The PSR details Defendant's arrests for carjacking, armed robbery, unlawfully driving away an automobile, receiving and concealing stolen property–motor vehicle, and felony firearm charges on February 17, 2008 in Detroit, Michigan.  While all counts other than the charge for receiving and concealing stolen property were dismissed, Defendant was sentenced to two years of probation under the Holmes Youthful Trainee Act.  Defendant claims that although "he did not successfully

---

[1] The United States Probation Office reported to the Court that a copy of the May 22, 2020 Memorandum had been provided to both parties.

complete the diversionary program, the Court should consider [his] youth at the time of the conviction." [Doc. 97 at 7]. However, the PSR details that four formal probation violations were filed from October 26, 2008 until July 25, 2012, including the revocation of the diversion program.

Defendant additionally was convicted for hinder/obstruct/resisting arrest on May 7, 2009 in Lansing, Michigan and arrested for larceny in a building and domestic violence on November 4, 2009. Defendant was convicted for the delivery/manufacture of cocaine, heroin, or another narcotic less than fifty grams on October 31, 2010 in Ann Arbor, Michigan and was sentenced on March 10, 2011 to serve eleven months in jail and two years of probation. However, on August 13, 2012, a warrant was signed for a violation of his probation, and his probation was ultimately terminated on February 4, 2020. Defendant was also arrested for brandishing a weapon and obstructing an officer on May 22, 2015, and while these charges were dismissed, he was convicted of brandishing a weapon and providing false information to a police officer. The PSR notes that Defendant provided an alias or false identification—Allan Rochon—during his May 22, 2015 arrest. Ultimately, Defendant has a history of drug-related offenses and numerous violations of his probation, participation in criminal activity while under supervision, and prior weapons-related charges. The Court finds that this factor weighs in favor of detention.

In the overall analysis, the Court also notes that Attorney General Barr detailed that "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. Here, the Court relies upon its subsequent analysis of the specific arguments under COVID-19 in the following section. At this juncture,

however, Defendant has established that he suffers from asthma, and the Court will weigh Defendant's medical condition in its decision.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (stating "[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")). Further, the Court notes Defendant's numerous probation violations and that the United States Probation Office has recommended that Defendant be detained. The Court has also considered Defendant's proposed conditions of home confinement and supervision by his friend, Victoria Green, serving as a proposed third-party custodian. However, the United State Probation Office has not reviewed the suitability of Ms. Green's residence, and the Court is unable to review whether Ms. Green would be able to influence the Defendant's conduct or would be inclined to report any violations of conditions to the Probation Office or the Court. Accordingly, the Court finds that there are no conditions sufficient to address the concern for danger that Defendant poses to the community.

### B. Effect of COVID-19

Defendant argues that his asthma places him at risk of experiencing serious and potentially life-threatening complications if he contracts COVID-19, particularly in light of the nature of his detention at the Blount County Jail. Defendant points to the heightened threat of COVID-19 within incarceration settings, as he is detained with three other individuals—leaving him unable to socially distance—as well as that the measures in place at the detention facility are insufficient.

Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." "The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i)." *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020).[2]

Defendant is currently detained at the Blount County Jail. The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities." *United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Instead, "the court must make an individualized

---

[2] Additionally, under 18 U.S.C. § 3142(i), "the release must be 'temporary,' no longer than needed to complete the 'necessary' defense preparations or to resolve the other 'compelling' circumstances." *United States v. Shelton*, No. 3:19-CR-14, 2020 WL 1815941, at *3 (W.D. Ky. Apr. 9, 2020) (internal citation omitted).

9

determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 ("While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

As the Court previously detailed in *United States v. Haun*, No. 3:20-cr-24-4 (E.D. Tenn. Apr. 10, 2020) [Doc. 31], the Court will adopt the reasoning of the Eastern District of Michigan and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Pruitt*, 2020 WL 1698661 at *6 (citing *Clark*, 2020 WL 1446895 at *2). Like Defendant Rochon, the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), and the court found that "these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i)" and are relevant in a case where the defendant originally consented to detention before seeking pretrial release. *Id.*

First, as discussed above, the § 3142(g) factors demonstrate that Defendant presents a danger to the community, and that no condition or combination of conditions would reasonably assure the safety of the community. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers Defendant's specific COVID-19 concerns. While Defendant has established that he has asthma, the Court notes that Defendant reported to the United States

10

Probation Office that he did not currently use an inhaler or take any medication for his asthma. However, Defendant subsequently filed letters of support which detail his history of asthma, as well as his current Bureau of Prisons Health Systems records noting a diagnosis of asthma and an albuterol inhaler [Doc. 98-1]. The Court acknowledges that this condition "may place Defendant in a category of persons with a heightened risk if infected with COVID-19." *United States v. Patino*, No. 18-CR-20451, 2020 WL 1676766, at *5 (E.D. Mich. Apr. 6, 2020); *see, e.g.*, *United States v. Roscoe*, No. 19-CR-20537, 2020 WL 1921661, at *6 (E.D. Mich. Apr. 21, 2020) ("The Court takes Defendant's medical concerns seriously, as the CDC has warned that '[p]eople with moderate to severe asthma may be at higher risk for getting very sick from COVID-19.'") (internal citation omitted).

However, the Court also considers the measures in place at the Blount County Jail to mitigate exposure to the virus. The Government detailed [Doc. 91-1] the procedures in place at the detention facility to ensure the safety of the inmate population, staff, and visitors. First, newly arriving inmates are not placed within the general population for two weeks in order to screen for symptoms and are transferred into general population units only after they have completed the screening process and show no symptoms for fourteen days. Additionally, upon arrival, medical staff is notified if an arriving inmate's temperature is 101 or above. Further, all individuals, including employees, have their temperature checked before entering the secured side of the building, outside volunteers are no longer allowed in the building, and only a limited number of video visitation kiosks are operating. All incarcerated inmates receive temperature checks twice weekly, and the entire detention facility is sanitized twice weekly with Electrostatic Clorox cleaning equipment. Inmates are given cleaning supplies a minimum of three times per week. Lastly, inmates are not moved outside the detention facility except for Federal Court transports

11

and life sustaining doctor appointments. Correction deputies now work a 32-hour work week. Finally, if there is a positive test result for COVID-19, the inmate will be transported to the University of Tennessee for treatment.

However, Defendant alleges that the measures in place at the detention facility are insufficient, as it is unclear how many testing kits or personal protective equipment are available to detainees. Defendant also claims that "[t]he government's position that [he] would be safer in custody is further undermined by the fact that deputies, nursing staff, maintenance workers, contracted workers, state inmates, and administrators go in and out of the facility on a daily basis." [Doc. 97 at 5]. Lastly, Defendant asserts that although inmates are given cleaning supplies a minimum of three times a week, the Center for Disease Control guidelines call for more, and due to time constraints, inmates are essentially unable to adequately disinfect commonly shared surfaces.

In *United States v. Domique Chandler*, No. 3:19-cr-160-TAV-HBG-2 (E.D. Tenn. May 5, 2020) [Dc. 58], referenced by Defendant in his reply brief, Chief Chris Cantrell testified regarding the COVID-19 procedures in place at the Blount County Jail. In particular, the Court summarized Chief Cantrell's testimony as:

> Chief Cantrell confirmed and further explained these mitigation measures. Additionally, he stated that the population of the jail is greatly reduced, although still twenty-three inmates above capacity. Chief Cantrell stated that inmates are given masks to wear, although they are not required to wear them during their recreation time.
> . . .
> Chief Cantrell stated that all inmates can purchase soap or are given soap upon request, if they are indigent. He stated that the jail is sanitized weekly with a chemical spray and that inmates are given cleaning supplies to clean their cells three times each week.
> . . .
> Chief Cantrell acknowledged that it is difficult to remain six feet away from other inmates in the jail. However, he stated that inmates have the choice to remain in their cells, rather than coming into the day room for their recreation time and that

>   an inmate can ask to move to "lockdown," which would permit that person to be in a cell alone with one hour of recreation daily.
>   . . .
>   Finally, Chief Cantrell stated that the jail will administer COVID-19 tests, obtained from and/returned to Blount County Memorial Hospital next door, if an inmate reports exposure to someone with COVID-19 or if an inmate has symptoms such as a persistent, unexplained fever.

[*Id.* at 13–14].

In the instant case, there are no confirmed cases of the COVID-19 virus at the Blount County Jail. *See United States v. You*, No. 20-5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) ("Critical here, however, there are no known COVID-19 cases at [the defendant's] present facility . . . [and] her facility has implemented precautionary measures to protect those detained in the facility."), *cited in United States v. Davis*, No. 2:19-CR-196-JRG-CRW, 2020 WL 1977219, at *3 (E.D. Tenn. Apr. 24, 2020).

Additionally, the Court finds that Defendant has failed to show that the mitigation measures in place are not sufficient. Chief Cantrell's testimony in an earlier proceeding before the Court demonstrates that detainees at the Blount County Jail have access to testing obtained from Blount County Memorial Hospital if they report exposure to someone with COVID-19 or if an inmate has symptoms such as a persistent, unexplained fever. While the Court acknowledges the difficulty in social distancing at a detention facility, the Government has detailed the measures in place with regard to testing, quarantining, and treatment.

Finally, the Court finds no evidence that the detention facility could not provide Defendant with adequate medical care or transport him to a hospital if he became seriously ill. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *6 (D. Kan. Mar. 25, 2020). "The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio

13

Mar. 30, 2020). "Courts have also been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason." *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) (holding the district court did not abuse its discretion where "[i]t acknowledged that [Defendant] had health issues rendering him more vulnerable to contracting the virus [in complications from a traumatic brain injury]" but "found he was no more vulnerable while detained than he would be in the community, where (in contrast to the detention center at his facility) the virus was rampant and he would have to seek outside medical attention"). Although Defendant has a heightened risk of serious illness, if he contracts COVID-19, he has failed to demonstrate how the measures in place at the detention facility are insufficient to mitigate his risk of contracting the virus or to care for him if he did.

Next, the Court reviews whether the proposed conditions of release are tailored to mitigate or exacerbate other COVID-19 risks to the Defendant. Defendant proposes being released to home confinement with Ms. Victoria Green serving as a third-party custodian. Additionally, Defendant has detailed that he would be able to continue his past employment while on home confinement. However, as the Court has previously detailed, Defendant has not updated the Court about any contact by the United States Probation Office with Ms. Green, and he does not "identify any COVID-19 precautions being implemented there." *United States v. Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *7 (E.D. Mich. Apr. 8, 2020) (citing *Smoot*, 2020 WL 1501810, at *3). Therefore, the Court finds that this factor does not weigh in favor of detention or release.

Lastly, Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the

14

defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. Here, the Court has already detailed that Defendant also has a previous history of failing to abide by conditions of his probation; therefore, the Court cannot ensure that he would abide by the current conditions of release. *See Pruitt*, 2020 WL 1698661 at *7 ("Pruitt's history of probation violation and nonappearance renders these concerns all the more troubling."); *Smoot*, 2020 WL 1501810 at *3 ("Most importantly, however, Defendant's extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'") (quoting *Clark*, 2020 WL 1446895 at *7). The Court also notes the enhanced personal risk to the probation officers assigned to supervise Defendant, in connection with his previous history of non-compliance. *See, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). Therefore, this factor also weighs in favor of Defendant's continued detention.

Ultimately, under the individualized circumstances of this case, the COVID-19 pandemic is not a compelling reason for Defendant's temporary release, given the fact he does not claim that he is suffering from symptoms of the virus or that the Blount County Jail has had any known cases of the virus. Although Defendant's asthma may place him at an increased risk of severe illness if he did contract COVID-19, the Court must balance this risk against his dangerousness to the community, the existence of significant protective measures at the jail, and the risk that he could also contract COVID-19 on release and pass it on to others. Defendant's medical condition alone is not sufficient to rebut the evidence presented by the Government of the protective measures and monitoring practices at the jail and of Defendant's dangerousness. *See United States v. Jackson*, No. 1:19-CR-730, 2020 WL 1890701, at *2 (N.D. Ohio Apr. 16, 2020) ("But even assuming that

15

Jackson's asthma places him at a higher risk for contracting the COVID-19 virus, the Court finds that Jackson is not entitled to temporary release."); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19—notwithstanding defendant's asthma, high blood pressure, and diabetes—noting that location monitoring puts pretrial services officers at risk); *cf. United States v. Sanders*, No. 2:19-CR-20288, 2020 WL 2320094, at *5 (E.D. Mich. May 11, 2020) (releasing defendant diagnosed with hypertension under 18 U.S.C. § 3143 where defendant proposed a responsible third-party custodian, there had been multiple positive tests at his detention facility, and "there has not previously been any judicial finding as to grounds warranting defendant's pretrial detention").

## III. CONCLUSION

Ultimately, an examination of specific factors related to Defendant's individualized risk of contracting the COVID-19 virus does not establish that Defendant's pretrial release is warranted. Further, the Government has proven by clear and convincing evidence that Defendant presents a danger to the community and that no condition or combination of conditions could reasonably assure the safety the community. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

**IT IS SO ORDERED.**

ENTER:

*/s/ Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge